UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICHOLAS CONNERS | CIVIL ACTION |
| VERSUS | 15-101 |
| JAMES POHLMANN, ET AL. | SECTION: "J" (2) |

**ORDER & REASONS**

Before the Court is a *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 28)** filed by Defendant Debra Becnel. The motion is opposed by Plaintiffs (Rec. Doc. 39). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

**FACTS AND PROCEDURAL BACKGROUND**

This litigation arises from the death of Nimali Henry, who was nineteen years old and a pretrial detainee in the custody of the St. Bernard Parish Sheriff's Office when she died on April 1, 2014. Plaintiffs are the father and grandparents of Henry's daughter and bring this action on her behalf.

Henry was arrested and taken to the St. Bernard Parish Prison ("SBPP") on March 21, 2014.[1] Prior to her arrest, Henry had been diagnosed with thrombotic thrombocytopenic purpura, a rare blood condition characterized by clotting in small blood vessels, and had been prescribed Prednisone for treatment, which her doctor

---
[1] (First Amended Complaint, Rec. Doc. 18, at 5).

described as perhaps "the most commonly used medicine in the United States."[2] Becnel was employed at SBPP as a correctional officer.[3]

On the evening of March 29, 2014, following other inmates' requests for medical assistance for Henry, Becnel went to the dorm where Henry was housed along with Corporal Timothy Williams and Deputy Lisa Vaccarella.[4] Henry and the other inmates told them that Henry was ill, needed medical treatment, and might die without treatment.[5] Becnel then told Williams and Vaccarella that complaints about Henry's medical condition had been an ongoing nuisance to the day-shift correctional officers before she left, as it was after the end of her shift.[6]

On the morning of March 31, 2014, Becnel again went to the dorm where Henry was housed following requests for medical assistance for Henry.[7] Becnel saw that Henry was sitting on the floor of the shower with reddish-brown bodily substances on and around her.[8] Later that morning, an officer placed Henry on medical watch after an episode in which Henry was weak and disoriented and had experienced significant vaginal bleeding.[9] At some point that day, Henry was placed in an isolation cell; at approximately 5:30 p.m., an officer called Captain Andre Dominick to the cell, where Becnel was also present.[10] At this time, Dominick was begrudgingly serving as the interim medical department officer because the regular medical department officer

---

[2] *Id.* at 4.
[3] *Id.* at 6.
[4] *Id.* at 11.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 15.
[8] *Id.*
[9] *Id.*
[10] *Id.*

2

was away at training.[11] Dominick entered the isolation cell, observed Henry, and acknowledged that he knew that Henry had not had her medication while incarcerated.[12] Dominick then directed Becnel to change Henry from medical watch to suicide watch.[13] Dominick also told Becnel that Henry had a serious blood disease and that he had not obtained the medication that Henry was supposed to take to treat the disease.[14] Shortly thereafter, Dominick ended his shift and left SBPP.[15] Henry died the next morning, on April 1, 2014, while still confined to the isolation cell.[16]

On December 3, 2015, the Government indicted Becnel, Williams, Vaccarella, and Dominick (collectively, the "Individual Defendants") with charges related to Henry's death. This action was stayed while the criminal case proceeded. All eventually pleaded guilty. Williams pleaded guilty to deprivation of rights under color of law on September 18, 2018. Dominick, Becnel, and Vaccarella proceeded to trial in November 2018, but after four days of proceedings, a mistrial was declared after Dominick apparently attempted suicide. Subsequently, Becnel pleaded guilty to making false statements to a federal agency on January 7, 2020. Finally, on January 16, 2020, Dominik pleaded guilty to deprivation of rights under color of law and Vaccarella pleaded guilty to concealing knowledge of the commission of a felony and making false statements to the FBI. Following multiple continuances due to the

---

[11] *Id.* at 6.
[12] *Id.* at 15.
[13] *Id.*
[14] *Id.* at 16.
[15] *Id.*
[16] *Id.* at 17.

COVID-19 pandemic, the Individual Defendants were all sentenced on March 10 and 11, 2021.[17]

Following the Individual Defendants' guilty pleas, Plaintiffs filed an amended complaint adding the Individual Defendants. As relevant here, Plaintiffs bring claims against Becnel for deliberate indifference under 42 U.S.C. § 1983, wrongful death and survival, and intentional infliction of emotional distress. Becnel then filed the instant motion to dismiss. The motion is before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading

---

[17] *See United States v. Dominick*, No. 15-CR-289 (E.D. La. 2021) (Lemelle, J.), ECF Nos. 857, 863, 869, 871.

4

as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Becnel primarily contends she is entitled to qualified immunity for Plaintiffs' § 1983 claim because she reported Henry's condition to Dominick, her superior. She also asserts that any conspiracy claim is inadequately alleged and barred by the intra-agency conspiracy rule. Finally, she contends that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

### I.  DELIBERATE INDIFFERENCE UNDER § 1983

The Fourteenth Amendment protects pretrial detainees' right to medical care and prohibits deliberate indifference to a pretrial detainee's medical needs. *See Hare v. City of Corinth (Hare I)*, 74 F.3d 633, 648-50 (5th Cir. 1996) (en banc). To establish a violation of this right, a plaintiff must show (1) she faced a "'substantial risk of serious harm,'" and (2) the defendant-prison official was aware of the risk but "'fail[ed] to take reasonable measures to abate it.'" *Id.* at 648 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 847 (1994)).

To overcome qualified immunity, a plaintiff must establish that (1) the allegations in the complaint show the defendant's conduct violated the plaintiff's constitutional rights, and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004). "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated

constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth (Hare II)*, 135 F.3d 320, 326 (5th Cir. 1998).

Becnel first argues she is entitled to qualified immunity because the law in this area is not clearly established. This argument is meritless. "As a pretrial detainee, [Henry] had a clearly established Fourteenth Amendment right not to be denied medical care as a result of deliberate indifference." *Brown v. Bolin*, 500 F. App'x 309, 312 (5th Cir. 2012) (citing *Hare I*, 74 F.3d at 650); *see also Hare II*, 135 F.3d at 327 ("[T]he deliberate indifference test enunciated in our 1996 en banc opinion was a clearly established minimum standard of conduct [as of] 1989."). Accordingly, the question before the Court is whether Becnel's conduct was objectively reasonable in light of this clearly established law.

Becnel contends that her conduct was reasonable because she notified her superiors of Henry's complaints and followed Dominick's orders, who was serving as the interim medical director, regarding the care Henry was to receive. She relies on *Mason v. Lafayette City-Parish Consolidate Government*, 806 F.3d 268 (5th Cir. 2015), to argue that "[a]n officer's failure to participate personally in the response to medical need does not constitute deliberate indifference where other officers respond."[18]

In *Mason*, the defendant-officer shot the victim seven times, then radioed for an ambulance and returned a police dog that had been attacking the victim to a police

---

[18] (Rec. Doc. 28-1, at 7).

6

vehicle. 806 F.3d at 273-74. When he returned, other officers had moved the victim and were administering first aid, but nevertheless the victim died at the scene. *Id.* at 274. The court held that the defendant's conduct did not display a wanton disregard for the victim's medical needs and that the defendant could not be held liable for the other officers' decision to move the victim, assuming such amounted to deliberate indifference. *Id.* at 279.

Here, Becnel had seen Henry covered in "reddish-brown bodily substances"[19] (reasonably inferred to be blood), and knew that Henry had a serious blood disease and needed her medication,[20] that Dominick knew Henry had a serious blood disease and needed her medication,[21] and that Dominick had not taken any action to obtain Henry's medication.[22] Thus, *Mason* is distinguishable because Becnel did not defer to another officer's provision of care but to Dominick's decision to *not* provide care. Additionally, the defendant's decision in *Mason* to not immediately provide care, which violated the police department's policy, was nevertheless not deliberate indifference because he was removing a dog that was attacking the victim. 806 F.3d at 279.[23] Here, the only "urgent task" that prevented Becnel from providing care for

---

[19] (Rec. Doc. 18, at 15). The Court quotes the complaint because Becnel objects to Plaintiffs' description of their allegations as Becnel knowing "'that Ms. Henry was bleeding from her vagina and was covered in blood.'" (Rec. Doc. 42, at 1).
[20] *Id.* at 11, 15-16.
[21] *Id.* at 15-16.
[22] *Id.* at 16. Becnel's argument that these allegations do not amount to her "kn[owing] that Captain Dominick was abdicating his responsibility to provide medical care," (Rec. Doc. 42, at 2), is meritless; moreover, all reasonable inferences must be drawn in favor of Plaintiffs. *See Lormand*, 565 F.3d at 232.
[23] *Montoya-Ortiz v. Brown*, 154 F. App'x 437 (5th Cir. 2005), also appears distinguishable, although the opinion does not provide enough facts to conduct a thorough analysis. There, the Fifth Circuit held: "[The plaintiff's] mere allegation that [the defendant-nurse] should have contacted additional doctors in contravention of the physician's order does not establish a showing of repugnant action to constitute deliberate indifference." *Id.* at 439. Becnel does not identify any order she would have violated by

Henry was finishing her shift and going home. But most critically, the defendant in *Mason* actually called an ambulance, which is what Plaintiffs contend Becnel should have done here.

In short, Becnel was aware of a substantial risk of serious harm to Henry because she knew Henry might die without her medication but Dominick was not getting it for her, and she was deliberately indifferent to this risk because she failed to take any measures to abate it. *See Hare I*, 74 F.3d at 648. Knowing that her superior was violating Henry's rights by denying her medical care, it was not reasonable for Becnel to do nothing.

Becnel's "primary argument is that she reported what she observed and heard to her superiors, who had more medical training than her, and brought them to Ms. Henry so they could decide whether to call an ambulance."[24] This argument cannot be resolved at this stage because Plaintiffs have not alleged she took such actions. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contends of the pleadings, including attachments thereto."). Plaintiffs allege that Becnel went to Henry's dorm on March 29 with Williams and Vaccarella and then on March 31 with Dominick and an unnamed officer, and that the only affirmative action she took with regard to Henry's condition was to describe complaints about it as "an ongoing nuisance" to Williams and Vaccarella.[25] Likewise,

---

calling an ambulance for Henry; moreover, *Montoya-Ortiz* is unpublished and therefore not binding. *See* 5TH CIR. R. 47.5.4.
[24] (Rec. Doc. 42, at 2-3).
[25] (Rec. Doc. 18, at 11).

to the extent Becnel argues that "[a] deputy cannot simply pick up a phone and call for an ambulance when ranking officers are present,"[26] this allegation is outside of the facts pleaded by Plaintiffs and may not be considered.

Conversely, Becnel's contention that "there is no allegation that Ms. Becnel failed to call [an ambulance]" the day before Henry's death is meritless, because Plaintiffs do not allege that she called an ambulance and all reasonable inferences must be drawn in favor of Plaintiffs. *See Lormand*, 565 F.3d at 232. Additionally, Plaintiffs need not allege that Becnel "believed that Ms. Henry's death was imminent,"[27] because deliberate indifference requires only a substantial risk of serious harm, and Plaintiffs have alleged that Becnel knew that Henry had been without her medication and asking for it for at least three days, had been told by Henry and other inmates that Henry might die without it, and had seen her that morning "with reddish-brown bodily substances on and around her."[28]

Finally, Becnel's argument that Plaintiffs have failed to state a claim because they only allege that she received inadequate medical treatment is unavailing, because Plaintiffs allege that Becnel ignored Henry's complaints, Dominick intentionally refused to provide Henry with her medication and instead placed her on suicide watch, and Becnel knew that Dominick was refusing to provide the correct treatment. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("A showing of deliberate indifference requires the prisoner to submit evidence that prison officials

---

[26] (Rec. Doc. 42, at 2).
[27] (Rec. Doc. 42, at 2).
[28] (Rec. Doc. 18, at 15).

'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Accordingly, the Court finds that Plaintiffs have stated a plausible § 1983 claim against Becnel.

## II. PLAINTIFFS' ALTERNATIVE ARGUMENT ON QUALIFIED IMMUNITY

In the alternative, Plaintiffs argue that the Court should overrule the doctrine of qualified immunity based on the Supreme Court's decision in *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). There, a group of Muslim men sued several FBI agents in their individual capacities for money damages under the Religious Freedom Restoration Act ("RFRA") for placing them on the "No Fly List" in retaliation for their refusal to act as informants against their religious communities. *Id.* at 489. The Court held that such a remedy was available under RFRA. *Id.* at 493. However, the Court also noted that qualified immunity was a viable defense for such a claim. *Id.* at 492 n.*.

Accordingly, *Tanzin* did not overrule qualified immunity by its own terms, and the Court declines Plaintiffs invitation to find that it did so implicitly. *See Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 550 (5th Cir. 2020) ("[L]ower courts may not 'conclude [that] recent cases have, by implication, overruled an earlier precedent.'" (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

## III. CONSPIRACY CLAIM

Becnel also seeks dismissal of Plaintiffs' conspiracy claim. However, Plaintiffs' complaint lists the following claims: (1) a municipal liability claim against Sheriff

Pohlmann; (2) a § 1983 claim against the Individual Defendants; (3) wrongful death and survival claims against Pohlmann and the Individual Defendants; (4) a battery claim against Williams, Vaccarella, and Pohlmann; (5) an intentional inflection of emotional distress claim against Pohlmann and the Individual Defendants; and (6) a direct action claim against Defendant Princeton Excess and Surplus Lines Insurance Company.[29] Accordingly, this request is denied as moot.

### IV.   STATE LAW CLAIMS

Finally, Becnel requests that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against her. However, because the Court denies her motion to dismiss the § 1983 claim, it likewise denies her motion to dismiss the state law claims.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Debra Becnel's *Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 28)** is **DENIED**.

New Orleans, Louisiana, this 29th day of March, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[29] (Rec. Doc. 18, at 19-30).